


**THE LAW OFFICES OF**
# FREDERICK K. BREWINGTON

*Attorneys and Counselors at Law*
556 Peninsula Blvd., Hempstead, New York 11550
Phone: 516-489-6959 • Fax: 516-489-6958 •
www.brewingtonlaw.com

| | |
|---|---|
| Frederick K. Brewington | Of Counsel |
| Albert D. Manuel III | Oscar Holt III |
| Cobia M. Powell | Jay D. Umans |

December 1, 2025

**BY ECF**
Hon. Joan M. Azrack, U.S.D.J.
United States District Court, Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re: *Collier v. County of Suffolk*
      Docket No.: 22cv7741 (JMA)(ST)

Dear Judge Azrack:

     As this Court is aware, this office represents the Plaintiff, Italia Collier, as Administrator of the Estate of Emmanuel Collier, deceased, in the above captioned action. Plaintiff submits this letter in Opposition to Defendants' request for a pre-motion conference in anticipation of moving for Summary Judgment. The Court should deny Defendants' request as crucial material facts are in dispute.

     **BACKGROUND-FACTS**

     Defendant Officers Casiano and Perito were on car patrol when they allegedly witnessed Mr. Emmanuel Johnson driving westbound in the eastbound lane on the Brentwood access road. (Casiano Dep. 40:22-41:13). The two officers did not immediately stop the vehicle and instead waited until Mr. Johnson was pulling into a parking space to activate their lights and sirens. (Casiano Dep. 42:22-43:6). The Officers claimed Mr. Johnson opened his door, closed his door, and then drove to some part of the parking lot.(Casiano Dep. 44:15-3; 45:10-46:10). The Officers claim Mr. Johnson went through a fence and then ran towards 908 Suffolk Avenue at which point they stopped the vehicle and began to pursue Mr. Johnson on foot. (Casiano Dep. 49:25-50:11). Defendant Casiano dropped his flashlight upon getting out of the vehicle and all he could see was a dark figure. (Casiano Dep. 51:20-52:7). Officer Perito additionally stated it was "very dark" and they "could not see anything back there." (Perito Dep. 48:13-18). This fact creates questions as to the officers' claim.

     At this point the Officers' stories differ, rasing disputes of fact. Officer Casiano stated that he saw Mr. Johnson raise his hands above his head, which he claimed meant to him, that Mr. Johnson was not surrendering, but attempting to climb the fence to escape. (Casiano Dep. 52:25-53:12). Officer Perito stated that Mr. Johnson had his back turned, failed to comply by showing his hands, and then immediately began looking through his backpack and trying to pull something out of it. (Perito Dep. 49:6-17). Officer Perito stated he tazed Mr. Johnson in the back and that this was unsuccessful in subduing him. (Perito Dep.: 50:17-51:10, 54:4-23). Officer Casiano stated he told Mr. Johnson to get on the ground, to which Mr. Johnson began to kneel on the ground. (Casiano Dep. 54:20-55:7). Both Officers state that after this Mr. Johnson got up and began to turn towards them with what they believed to be a gun in his hand. (Casiano Dep.: 60:5-18, Perito Dep. 50:17-51:10). Both Officer Perito and Officer Casiano claim that Mr. Johnson turned around and was pointing the gun towards them. (Perito Dep. 56:3-11, Casiano Dep. 65:10-16). It is at this moment that the Officers claim they began to fire on

Mr. Johnson. *Id.*

Notably, the Officers alleged factual account of the shooting death of Emmanuel Johnson is disputed by the Medical Examiner and Plaintiff's Expert, Dr. Hua, which create a serious factual dispute[1]. The gun shot wounds sustained by Mr. Johnson were to the back of his body. (Medical Examiner (ME) Report pp. 1-9; Plaintiff's Expert Report of Hua p. 2, ¶¶10, 11). Emanuel Johnson was shot from a distance by two (2) officers of similar heights. Mr. Johnson suffered had four (4) bullets removed from his body, all fired by Officer Perito. (Sineo Dep pp.73-74) When evaluating the bullets trajectory inside Mr. Johnson's torso, buttocks, and legs, it was determined that his torso, buttocks, and legs were leaning forward and with his back toward the shooting officers at the moments of these gunshot wounds. (*Id.*, Hua Report p. 2). The ME and Hua expert report directly contradicts officers accounts that Mr. Johnson was standing and facing them when they shot Mr. Johnson. (Perito Dep. 54:24-56:11).

**LEGAL ARGUMENT**

"A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d. Cir. 1995). The role of the court on such a motion "is not to resolve the disputed issues of fact, but to assess whether there are any factual issues to be tried." *Knight v. United States Fire Insurance Co.*, 804 F.2d 9, 11(2d Cir. 1986). The facts as stated by the respective parties give rise to disputes as to material facts on which a jury must make a determination.

In this case, where excessive force is tied to the use of deadly force, where the witness most likely to contradict the living Police Officers' story is unable to testify because he is the decedent in this action, a court deciding a motion for summary judgment premised on assertion of objective reasonableness may not simply accept what may be the self-serving account by the police officers. Rather, courts must also consider circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether such evidence could convince a rational factfinder that the officer acted unreasonably. *O'Bert ex rel. Est. of O'Bert v. Vargo*, 331 F.3d 29 (2d Cir. 2003). Here the direct scientific evidence weighs heavily against Defendants.

A police officer's use of deadly force violates the Fourth Amendment when it is not "objectively reasonable." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Here, the inquiry into the reasonableness of Officers Perito and Casiano deadly force requires analyzing the "totality of the circumstances." *Id*., at 427–428, 137 S.Ct. 1539. There is no "easy-to-apply legal test" or "on/off switch" in this context. *Scott v. Harris*, 550 U.S. 372, 382–383, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). Deciding whether a use of force was objectively reasonable demands "careful attention to the facts and circumstances" relating to the incident, as then known to the officer. *Graham*, 490 U.S., at 396, 109 S.Ct. 1865. For example, the "severity of the crime" prompting the stop can carry weight in the analysis. *See ibid*. So too can actions the officer took during the stop, such as giving warnings or otherwise trying to control the encounter. *See id.*, at 12, 105 S.Ct. 1694. The stopped person's conduct is always relevant because it indicates the nature and level of the threat he possesses, either to the officer

---

[1] Defendants' expert fails to provide any opinion of the positioning of Mr. Johnson's body at the time of his being subjected to the deadly physical for by Defendant Officers.

2

or to others. *See ibid*.; *Graham*, 490 U.S., at 396, 109 S.Ct. 1865.

This is a case where there is no factual dispute as to whether deadly force was used, but whether the deadly force was reasonable. It was not. By admission of the Defendants, this was a warrant-less traffic stop where Mr. Johnson ran away from officers, not toward upon his exiting his car. As Mr. Johnson was shot in the back when he was fired upon, there was no cause for deadly use of force. In fact, the officer who tazed Mr. Johnson stated that he was tazed in the back which further supports that Mr. Johnson had never turned towards officers with a weapon. (Perito 54:4-23). Given the totality of the circumstances (See *Graham* at 427–428), it is reasonable that a jury could decide that Mr. Johnson was shot unnecessarily in his back and the Officers actions were unreasonable.

Regarding Plaintiff's *Monell* claim, it is well settled that a finding of municipal liability does not depend automatically or necessarily on the liability of any police officer. If an officer's actions caused death or injury, which amounts to deprivation of life or liberty, because the officer was following a municipal policy reflecting the policymakers' deliberate indifference to constitutional rights, then the Municipality is directly liable under section 1983 for causing a violation of the Plaintiff's Fourteenth Amendment rights. The pursuing police officers who shot Mr. Johnson are merely the causal conduits for the constitutional violations committed by the the County of Suffolk.; *Barrett v. Orange County Human Rights Com'n*, 194 F.3d 341, 349, 350 (2d Cir. 1999). "*Monell* does not require that a jury find an individual defendant liable before it can find a local governmental body liable." A plaintiff may fail to name the correct individual defendants, or any individual defendants, but could still recover against the municipality if injured by a municipal policy. *Wilson v. Town of Mendon*, 294 F.3d 1, 7 (1st Cir. 2002).

Further, a municipality may be liable even if liability cannot be ascribed to a single individual officer. *Owen v. City of Independence, 445 U.S. 622, 652, 63 L. Ed. 2d 673, 100 S. Ct. 1398 (1980)* (a "'systemic' injury" may "result not so much from the conduct of any single individual, but from the interactive behavior of several government officials, each of whom may be acting in good faith.") (citation omitted). And in *Fairley v. Luman,* 281 F.3d 913 (9th Cir. 2002), we explicitly rejected a municipality's argument that it could not be held liable as a matter of law because the jury had determined that the individual officers had inflicted no constitutional injury. *Id.* at 916. If a plaintiff established he suffered constitutional injury *by the City*, the fact that individual officers are exonerated, or in the present case unnamed, is immaterial to liability under *§ 1983*." *Id*.

In the years from 2016-2020 in Suffolk County, excessive force complaints exceeded 60 in umber. In 2022, there were 82 allegations of excessive force, and only 7% of all complaints were substantiated. The remainder were either unfounded, unsubstantiated, or the officers were deemed to have been exonerated from those reports of alleged misconduct. (*Annual Report of Biased Policing - is prepared and published by the Suffolk County Police Department*). If the investigatory process in this case is consistent with the manner in which deadly force actions are reviewed by the department, this practice is contrary to generally accepted policing practice. There are numerous court cases in which excessive and deadly force complaints have been brought against Suffolk County which have been resolved in favor of the Plaintiff(s). However, still, as in this case, the County continues to fails to engage in any meaningful investigation of its own officers as we have learned is some of our own cases. *See, Kelly v. County of Suffolk* 14-CV-04431, *McCune v. County of Suffolk*, 2:14-cv-4431, *Kirby v. County of Suffolk*, 16-CV-7261, and *Gonzalez (Lazo) v County of Suffolk*, CV-09-1023.

3

**CONCLUSION**

       For all of the foreboding reasons, Defendants' pre-motion letter for a conference in contemplation of filing for summary judgment should be denied as there are numerous material issued of fact which should be decided by a jury, rather than additional motion practice continuing the conflicting arguments as to the facts of this case.

       We thank the Court for its kind consideration in this matter.

                                     Respectfully submitted,

                                     *Frederick K. Brewington*
                                     FREDERICK K. BREWINGTON

cc: All Counsel by ECF